UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PAOLA PAZYMINO, on behalf of herself and those similarly situated,**<br><br>  Plaintiff,<br><br>  v.<br><br>**PORTFOLIO RECOVERY ASSOCIATES, LLC,**<br><br>  Defendant. | Civ. No. 19-12259 (KM) (ESK)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Paola Pazymino, on behalf of herself and others similarly situated, filed this putative class action against Defendant Portfolio Recovery Associates, LLC ("PRA"), a debt collection company, alleging that PRA violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by sending her collection letters containing settlement and savings offers in connection with unenforceable debt.

Now before the Court is PRA's motion for summary judgment. For the reasons expressed below, PRA's motion for summary judgment is **DENIED**.

**I.  BACKGROUND**

  **A. Facts**[1]

This case arises out of Defendant PRA's attempts to collect allegedly time-barred debt owed by Ms. Pazymino. In July 2014, Ms. Pazymino defaulted

---

[1]  Certain citations to record are abbreviated as follows:

"DE" = Docket entry number in this case

"Compl." = First Amended Class Action Complaint and Jury Demand (DE 60)

"Def. St." = Local Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment (DE 73-2)

on a debt she owed to "Comenity Bank/Ann Taylor."[2] (Def. St. ¶ 4; Pl. Resp. ¶ 4.) The parties agree that upon that default, a cause of action accrued to enforce the debt. (Def. St. ¶ 4; Pl. Resp. ¶ 4.) PRA subsequently purchased Ms. Pazymino's debt. (Def. St. ¶ 5; Pl. Resp. ¶ 5.) On May 8, 2018, PRA sent Ms. Pazymino a letter attempting to collect the debt. The letter indicated that Ms. Pazymino owed a balance of $555.72 and included a settlement offer, stating that if Ms. Pazymino paid PRA $305.65 by June 15, 2018, her account would be considered "Settled in Full" once the payment posted, saving her $250.07 on the listed balance. (Compl. Ex. A.) PRA sent Ms. Pazymino three more letters, dated August 14, 2018, December 18, 2018, and March 19, 2019. Each of these three subsequent letters contained similar savings offers, as well as the following disclaimer:

> The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it. Depending on the laws of your state, certain actions, such as making a payment or promising to pay the debt, may restart the time period for the filing of a lawsuit against you; but even if that were the case, we still will not sue you on this debt.

(Compl. Ex. B, C, D.) That disclaimer had not appeared in the earlier, May 8, 2018, letter.

---

"Mot." = Defendant Portfolio Recovery Associates, LLC's Memorandum of Law in Support of its Motion for Summary Judgment (DE 73-3)

"Pl. Resp." = Plaintiff's Local Rule 56.1(A) Statement in Opposition to Defendant's Motion for Summary Judgment (DE 74)

"Opp." = Brief on Behalf of Plaintiff, Paola Pazymino in Opposition to Defendant's Motion for Summary Judgment (DE 74-1)

"Stern Decl." = Declaration of Philip D. Stern, Esq. (DE 74-2)

"Reply" = Defendant Portfolio Recovery Associates, LLC's Reply in Support of its Motion for Summary Judgment (DE 75)

[2]   It appears from the exhibits Ms. Pazymino attached to the pleadings that Comenity Bank served as a creditor for purchases Ms. Pazymino made from retail merchant Ann Taylor. (Compl. Exs. A, B, C, D.)

According to Ms. Pazymino, the first, May 8, 2018 letter violated the FDCPA, because by then the debt PRA was seeking to collect was time-barred and therefore unenforceable, and the letter contained no disclaimer to that effect. (Compl. ¶¶ 20, 37-41.) Ms. Pazymino also alleges that the three subsequent letters violated the FDCPA because they contained "representations of 'offers' and 'savings' which [were] false because the Debt is unenforceable in a court of law. . ." (Compl. ¶ 54.) The debt was time-barred, says Ms. Pazymino, because the written terms of the underlying credit card agreement chose Delaware law to govern the transaction, and "Delaware law provides that no action shall be brought after the expiration of 3 years from the accruing of the cause of action." (Compl. 24-25 (citing Del. Code Ann. 10, 8106(a)).) Based on Ms. Pazymino's theory of the case, her debt was no longer enforceable three years after her default, *i.e.,* as of July 2017.

PRA asserts that it is entitled to summary judgment because its enforcement of Ms. Pazymino's debt was subject to New Jersey's six-year statute of limitations, not Delaware's three-year statute. PRA contends that Ms. Pazymino's FDCPA claim therefore fails as a matter of law because the debt was not time-barred when PRA sent its collection letters. (Mot. 7-9.)

**B. Procedural History**

Ms. Pazymino initiated this action on May 7, 2019. (DE 1.) On June 3, 2021, Ms. Pazymino filed the currently operative pleading, her First Amended Class Action Complaint and Jury Demand, in which she asserts a claim against PRA for several alleged violations of the FDCPA. (DE 60.) On July 1, 2021, PRA served its Answer to the First Amended Class Action Complaint. (DE 62.) On January 28, 2022, PRA filed the present motion for summary judgment, requesting that the Court enter judgment in its favor and against Ms. Pazymino with respect to the sole count contained in Ms. Pazymino's First Amended Class Action Complaint. (DE 73.) On March 15, 2022, Ms. Pazymino filed a brief in opposition to PRA's motion for summary judgment. (DE 74.) On April 4, 2022, PRA filed a reply brief in support of its motion. (DE 75.) On

December 1, 2022, the Court heard oral argument on PRA's summary judgment motion. On December 8, 2022, at the request of the Court, Ms. Pazymino submitted further briefing responding to the defendant's arguments concerning the application of New Jersey's statute of limitations to contracts that contain a choice of law provision selecting a foreign state's substantive law to govern the agreement. (DE 77.) PRA's summary judgment motion is fully briefed and ripe for decision.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific

facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F.Supp.2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F. 3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). In that respect, the Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### III.  DISCUSSION

To prevail on a claim under the FDCPA, "a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (citation omitted). At issue here is the fourth prong, whether PRA violated a provision of the FDCPA in attempting to collect the debt. Ms. Pazymino claims that PRA violated § 1692e and 1692f of the FDCPA by misrepresenting the legal status of the debt in its collection letters, starting with its May 8, 2018 letter, which contained no disclaimer indicating that the statute of limitations for enforcing the debt had expired. (Compl. ¶¶ 20, 26, 40-41.) As both parties acknowledge in their papers, Ms. Pazymino's FDCPA claim

5

turns on a single threshold issue: whether PRA's ability to enforce Ms. Pazymino's debt was subject to Delaware's three-year statute of limitations or New Jersey's six-year statute of limitations. (Mot. at 1; Opp. at 1.) If the Delaware statute applied, the debt was time-barred when PRA sent its collection letters, but if the New Jersey statute applied, the debt was still enforceable. As I explain in further detail below, whether the underlying contract contained a choice-of-law provision selecting Delaware law to govern the transaction is a genuine, disputed issue of material fact. Therefore, summary judgment is inappropriate, and PRA's motion must be denied.

PRA argues that it is entitled to summary judgment because 1) Ms. Pazymino "failed to produce or otherwise discover the alleged contract, or the language of any applicable choice of law provision" (Mot. at 2, 9-13); 2) even if the contract did contain the particular Delaware choice-of-law provision on which Ms. Pazymino relies, the New Jersey statute would still govern because the contractual choice-of-law provision lacks an express reference to Delaware's statute of limitations (Mot. at 11-13 ); and 3) the New Jersey statute of limitations applies to Ms. Pazymino's account because PRA was attempting to collect the debt "under an account stated theory" (Mot. at 2-3, 7-9). Each of these arguments fails.

*First*, the fact that Ms. Pazymino has not produced the underlying contract is not grounds for an award of summary judgment. While it appears to be the case that Ms. Pazymino did not pursue third-party discovery from Comenity Bank or Ann Taylor to discover the precise terms of her contract, she *has* put forward evidence from which a fact finder could conclude that her contract contained a Delaware choice-of-law provision. During discovery, Ms. Pazymino directed PRA to a publicly available repository of credit card agreements issued by Comenity Bank for Ann Taylor-branded credit cards. This repository is maintained by the Consumer Financial Protection Bureau ("CFPB") pursuant to the Truth in Lending Act, as amended by the Credit CARD Act of 2009, 15 U.S.C. § 1632(d). Following a good-faith review of the repository, Ms. Pazymino identified a set of 130 similar credit card agreements

6

spanning from 2011 to 2021, all of which contained the following Delaware choice-of-law provision:

> THIS AGREEMENT IS GOVERNED BY DELAWARE LAW AND APPLICABLE FEDERAL LAW. THIS IS THE LAW WE ARE SPEAKING OF WHEN WE REFER TO A TERM PERMITTED OR REQUIRED BY APPLICABLE LAW.[3]

(Stern Decl. ¶¶ 11-13, Ex. 2.)

Ms. Pazymino also produced PRA's collection letters, three of which included a disclaimer stating: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." (Compl. Ex. B, C, D.) PRA's disclaimer could very well be construed as an acknowledgement by PRA that its right to enforce Ms. Pazymino's debt had already expired as early as August 14, 2018 (Compl. Ex. B), almost two years sooner than it would have if the New Jersey statute of limitations applied (*i.e.*, July 2020).

I exercise no judgment as to the weight of this evidence, but drawing all justifiable inferences in favor of Ms. Pazymino, she has made a sufficient threshold showing that her contract contained a Delaware choice-of-law provision. It will be up to the trier of fact to determine whether her evidence proves that fact. Perhaps PRA is right that had Ms. Pazymino produced or discovered a copy of her contract, she would be in a stronger position to prove her case, but because "reasonable minds could differ as to the import of the

---

[3] Plaintiff's counsel notes in his declaration that the CFPB repository contains current versions and archived quarterly submissions by credit card companies of their agreements with consumers spanning from the third quarter of 2011 through the third quarter of 2021 with three exceptions: 1) there are no archived submissions for 2015, 2) the second quarter of 2019 is incomplete, and 3) there are possible omissions beginning in the first quarter of 2020 due to the CFPB's COVID-19 policy. (Stern Decl. ¶ 11.) Plaintiff's counsel searched the repository for all available agreements issued by Comenity Bank (including those issued under Comenity's former names) on an Ann Taylor branded account (including LOFT, an affiliated brand). (Stern Decl. ¶ 12.)

evidence" Ms. Pazymino has put forward, summary judgment is not appropriate.[4] *Anderson*, 477 U.S. at 250-51.[5]

*Second*, PRA argues in the alternative that it should prevail as a matter of law because, even if Ms. Pazymino's contract contained the above Delaware choice-of-law provision, New Jersey's statute of limitations would nevertheless

---

[4]     It is curious that PRA has not itself produced a copy of the underlying contract. Indeed, as Ms. Pazymino points out in her Responses and Objections to PRA's First Set of Discovery Requests, the "written terms" of Ms. Pazymino's agreement with Comenity Bank are likely to be found in documents "that are already in Defendant's possession, custody, and/or control, or to which Defendant has greater access than that of Plaintiff." (Mot. Ex. E at 7.) Because an assignee steps into the shoes of the assignor and seeks to collect a debt based on a contract, the Court will not lightly indulge a claim of ignorance of the contractual terms. As PRA acknowledges in its papers, following its purchase of Ms. Pazymino's account, it remained bound by the terms of her original agreement with Comenity Bank. However, at oral argument, counsel for PRA stated that it does not have access to a copy of Ms. Pazymino's contract. This is difficult to accept. As a sophisticated financial services entity, it is probable that PRA possesses or at least has access to the "written terms" at issue here. Even on the doubtful assumption that PRA cannot informally obtain the documents from Comenity, it is just as capable of pursuing third-party discovery as Ms. Pazymino is.

[5]     PRA raises an alternative argument for the first time in its reply brief, that even if the Court was to adopt the contract language contained in the "Exemplar Agreement" to which both parties have cited, Ms. Pazymino's claims would still fail because the "Exemplar Agreement" includes a "Security Interest" provision. (Reply at 6-7.) PRA argues that such a purchase money security agreement is governed by the Uniform Commercial Code, under which PRA's enforcement of Ms. Pazymino's debt would be subject to a four-year statute of limitations. (Reply at 6-7 (citing Del. Code § 2-725; § 9-103).) I am reluctant to consider this belatedly-raised argument, but in any event it is unpersuasive. At oral argument, counsel for PRA acknowledged that this security interest provision appears in only some of the agreements Ms. Pazymino submitted from the CFPB's repository, and I cannot without more attribute the language of a sample agreement to the contract at issue. This would amount to a factual determination that is exclusively for the trier of fact to make. Moreover, even if a four-year statute of limitations did apply to the enforcement of Ms. Pazymino's debt, her debt still would have been time-barred as of the end of July 2018, prior to the time PRA sent its second, third, and fourth collection letters. Because Ms. Pazymino asserts a colorable claim for how these three letters misrepresented the legal status of her debt, even with their disclaimers that PRA would not sue her (*see, e.g.,* Compl. ¶ 56), applying a four-year statute of limitations would not mean that her claims fail as a matter of law.

govern. PRA argues that New Jersey's statute would still apply because the above provision does not contain an express reference to Delaware's statute of limitations. (Mot. at 11-13.) To support this argument, PRA relies on the Third Circuit's holding in *Gluck v. Unisys Corporation*—reiterated in this Court's opinion in *Greene v. Midland Credit Management, Inc.*—that "choice of law provisions in contracts do not apply to statutes of limitations, unless the reference is express." (*Id.* (citing *Greene v. Midland Credit Management, Inc.*, No. CV 17-1322 (JLL), 2019 WL 102410, at *3 (D.N.J. Jan. 3, 2019); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992)).) In both of these cases, however, the Court employed the *federal* conflicts rule for determining an applicable statute of limitations.[6]

The statute of limitations at issue here, however, is the one that would apply to a hypothetical action by PRA to collect the debt. To resolve a conflict as to the applicable statute of limitations on a contract claim—*i.e.* to determine whether a debt pursuant to a credit card agreement was enforceable—a court, whether federal or state, would look to the conflicts rules of the state in which it sits (here, assumed by all parties to be New Jersey). *Maniscalco v. Brother Intern. (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013). In New Jersey, "section 142 of the [Restatement (Second) of Conflicts of Law] is now the operative choice-of-law rule for resolving statute-of-limitations conflicts[.]" *McCarrell v. Hoffmann–La Roche, Inc.*, 227 N.J. 569, 574, 583 (2017).[7]

Section 142 reads as follows:

---

[6] In *Gluck*, the Third Circuit explicitly applied the federal conflicts rule, stating that "If a statute of limitations of a state other than the forum state were implicated in the litigation of a federal claim, then federal, not state, choice of law principles would govern." 960 F.2d at 1179.

[7] As this Court has observed, "while the court in *McCarrell* applied § 142 in tort actions, the Appellate Division has expanded the application of § 142 to contractual disputes as well. *See Berkley Risk Solutions, LLC v. Industrial Re–International, Inc.*, No. L–0163–15, 2017 WL 4159170, at *7–*8 (N.J. Sup. Ct., App. Div., Sept. 20, 2017)." *Yerkes v. Weiss*, No. CV 17-2493(JBS/AMD), 2018 WL 1558146, at *5 (D.N.J. Mar. 29, 2018).

9

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> (1) The forum will apply its own statute of limitations barring the claim.
>
> (2) The forum will applying its own statute of limitations permitting the claim unless:
>
> > a. maintenance of the claim would serve no substantial interest of the forum; and
> >
> > b. the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement (Second) § 142.[8] The default rule, then, is that a New Jersey forum would apply its own statute of limitations. That default rule is subject, however, to a further two-part inquiry: 1) whether enforcing Ms. Pazymino's debt would serve a substantial interest of the State of New Jersey, and 2) whether the State of Delaware has a more significant relationship to the parties and the hypothetical contract claim. I decline to resolve either of these questions for several reasons. As an initial matter, there is no live contract claim before me, and I will not invoke the policy interests of the State of New Jersey—or my understanding of them—in order to decide a hypothetical case.

---

[8]    In her supplemental letter brief following oral argument, Ms. Pazymino relied on *Heavner v. Uniroyal, Inc.*, 63 N.J. 130 (1973) to argue that courts applying New Jersey law should analyze statute of limitations choice of law questions "as if the issue were a choice of substantive law." (DE 77 at 3-4 (quoting *Jackson v. Midland Funding, LLC*, 754 F. Supp. 2d 711, 715 (D.N.J. 2010) (applying *Heavner*)).) This is an outdated statement of New Jersey law. In *McCarrell*, the New Jersey Supreme Court discarded the conflict of laws rule set forth in *Heavner* in favor the Restatement rule described here. *See McCarrell*, 227 N.J. at 569, 574, 583 (2017) ("We hold that section 142 of the Second Restatement is now the operative choice-of-law rule for resolving statute-of-limitations conflicts because it will channel judicial discretion and lead to more predictable and uniform results that are consistent with the just expectations of the parties.")

Indeed, even if I were inclined to resolve these questions, the record is too thin to render an opinion regarding how significant the State of Delaware's relationship is to the parties and to the enforcement of Ms. Pazymino's debt relative to New Jersey's, should the inquiry reach that point. I also note that the violation Ms. Pazymino alleges with respect to PRA's second, third, and fourth collection letters would survive regardless of which statute of limitations applied. (Compl. ¶ 56 ("Furthermore, each of the three letters offered an agreement by which Plaintiff could make monthly payments in three- and six-installments but did not disclose that, if accepted and subsequently breached, PRA could lawfully sue Plaintiff without regard for the expiration of the statute of limitations on the Debt.").) And recall, of course, that even setting all these considerations aside, there still remains a genuine dispute of material fact regarding the underlying contract language that renders summary judgment inappropriate at this stage.

*Third*, PRA's final argument—that the New Jersey statute of limitations applies to Ms. Pazymino's debt because PRA was "collecting on an account stated theory" (Mot. at 2-3, 7-9)—is premised on a misunderstanding of what constitutes an account stated cause of action. To establish an account stated, a claimant "must show that a balance was struck in such circumstances as to import a promise of payment on the one side and acceptance on the other." *United States v. A. S. Kreider Co.*, 313 U.S. 443, 448 (1941). To be clear, PRA has not asserted an account stated claim, or any other claim; the collection causes of action are hypothetical ones. However, PRA argues that an account stated cause of action accrued each time Ms. Pazymino received one of its collection letters and declined to object to the amount PRA indicated she owed, and therefore that her debt was still enforceable when it sent its collection letters. But if, as Ms. Pazymino claims, her debt was unenforceable at the time she began receiving PRA's collection letters, there is no basis to infer that Ms. Pazymino made any "promise of payment" giving rise to an account stated claim. PRA has presented no evidence of assent by Ms. Pazymino to any of the balances contained in its collection letters. *See Harris v. Merlino*, 137 N.J. 717,

11

720 (1948) (citing 6 Williston on Contracts, sec. 1863). And even if PRA did assert an account stated claim, such a claim would turn, at least in part, on the same factual determination preventing summary judgment here: whether Ms. Pazymino's contract contained a Delaware choice-of-law provision.[9]

Because there remains a genuine disputed issue of material fact, summary judgment is inappropriate, and PRA's motion must be denied.

## IV.   CONCLUSION

For the reasons set forth above, PRA's motion for summary judgment is **DENIED**.

An appropriate order follows.

Dated: December 14, 2022

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

---

[9] Thus there is at best an issue of fact as to whether there would be an account-stated cause of action at all. For that reason, I need not reach the issue of whether the sending of periodic bills for the same debt staves off the running of the statute of limitations.